IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WINSTON HOLLOWAY                                                                               PLAINTIFF

v.                                              5:08CV00196-BRW

MARIE AUSTIN, ET AL.                                                                        DEFENDANTS

### ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 148). On January 14, 2011, I ordered that the motion for summary judgment be bifurcated,[1] so that the threshold issue of exhaustion of administrative remedies could be decided before considering Defendant's other grounds for summary judgment. Plaintiff has responded to the motion for summary judgment on the issue of exhaustion of administrative remedies,[2] and Defendants have replied.[3] For the following reasons I find that Defendants' Motion for Summary Judgment should be, and hereby is, GRANTED.

### I.   BACKGROUND[4]

Plaintiff is a prisoner at the Cummins Unit of the Arkansas Department of Corrections ("ADC"). He experienced diminished vision and pain in his right eye on February 6, 2007, and reported the condition to prison staff by completing an Emergency Sick Call Form on February 7. In the late morning on the same day that he complained of the condition, he was taken to the infirmary where he was seen by Defendant Stacy Boardman, a Cummins Unit nurse. On

---

[1]Doc. No. 152.

[2]Doc. No. 155.

[3]Doc. No. 156.

[4]Unless otherwise indicated the information in this section is from Plaintiff's Amended Complaint, Doc. No. 141.

February 8, Plaintiff was seen by Defendant Dr. James Blackmon, who recommended that Plaintiff be taken to the Jones Eye Care Clinic in Little Rock, Arkansas, for treatment. Later that day Plaintiff was taken to the clinic and treated for a retinal tear and hemorrhaging. The clinic recommended that Plaintiff be put on light or limited work and be given extra pillows to elevate his head. Plaintiff alleges that Defendants did not notify the prison staff of these recommendations, which caused another emergency condition on March 28, 2007. On March 29, 2007, Plaintiff was taken back to the Jones Eye Care clinic where he was treated again. The eye care clinic made the same recommendations regarding light or limited work and elevating his head. Plaintiff alleges that the Defendants failed a second time to communicate these recommendations to prison staff which caused further pain and suffering, irreparable damage to his eye.

This *pro se* action was filed on July 17, 2008.[5] On December 2, 2009, I rejected the Report and Recommendations of Magistrate Judge H. David Young that recommended Plaintiff's complaint be dismissed with prejudice for failure to create a fact issue to be submitted to a jury,[6] an Counsel was appointed counsel for Plaintiff.[7]

## II.     STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.[8]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

---

[5]Doc. No. 1.

[6]Doc. No. 119.

[7]Doc. No. 122.

[8]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  FED. R. CIV. P. 56.

2

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[9]

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues.[10] The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*:[11]

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[12]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

### III. DISCUSSION

Defendants argue that summary judgment is appropriate because Plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 requires prisoners to exhaust all administrative remedies before bringing a § 1983 action regarding prison

---

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[10]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).

[11]862 F.2d 1338 (8th Cir. 1988)

[12]*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original).

conditions or occurrences.[13] Defendants are correct that "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory."[14] The Supreme Court has said that "no unexhausted claim may be considered"[15] under the PLRA. In *Woodford v. Ngo* the Court said:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. . . . Proper exhaustion demands compliance with an agency's deadlines and other critical procedures because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.[16]

I find that Plaintiff failed to exhaust his administrative remedies.

The ADC, the agency overseeing prisons in the state of Arkansas, promulgated Administrative Rule 835 ("AR 835"), which became effective on February 1, 2004, and remained in effect during the time when the actions giving rise to Plaintiff's complaint occurred.[17] AR 835 provides a procedure for filing and appealing a grievance by a prisoner regarding the conditions of his confinement. To exhaust administrative remedies, a prisoner must follow the procedure in AR 835. The first step in the process is the Informal Resolution Procedure.[18] An inmate must complete an Informal Resolution Form and give it to a prison staffer who is a designated "problem solver."[19] The designated problem solver is to meet with the

---

[13] 42 U.S.C. § 1997e.

[14] *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

[15] *Jones v. Bock*, 549 U.S. 199, 219 (2007).

[16] 126 S. Ct. 2378, 2385-86 (2006).

[17] Doc. No. 155-1.

[18] *Id*. at § IV (E).

[19] *Id*. at § IV (E)(2).

inmate immediately if the problem is deemed an emergency.[20] The rule defines such a situation as "one in which the inmate may be subjected to a substantial risk of physical harm."[21] The problem solver is required to document any attempts at resolution on the form, and to give the inmate a copy of the form.[22] If the inmate is not satisfied with the informal resolution he or she can submit a formal grievance, which must include a statement describing the grievance that is the same as the statement on the informal grievance form.[23] When the formal grievance is received by prison staff it is assigned a number.[24] If the nature of the grievance is medical it is forwarded within five days to the Unit Infirmary Manager, or if the manager is a named party to the grievance, it is sent to the Regional Administrator.[25] An acknowledgment of the formal grievance is to be sent to the inmate within five days of receipt.[26] The medical health department is required to responded in 20 "working days."[27] The rule defines "working days" as week days (i.e. not Saturdays, Sundays or state holidays).[28] Grievances that have not been responded to in the allotted time may proceed to the next level for review by a Deputy Director.[29] If the warden or medical health department responds and the inmate disagrees with the response it may

---

[20]*Id.* at § IV (E)(5).

[21]*Id.*

[22]Doc. No. 155-1, § (E)(6).

[23]*Id.* at § IV (E)(7).

[24]*Id.* at § IV (F)(4).

[25]*Id.* at § IV (F)(5)(a).

[26]*Id.* at § IV (F)(6).

[27]Doc. No. 155-5, § IV (F)(6).

[28]*Id.* at § III (C).

[29]*Id.* at § IV (F)(9).

appealed to a Deputy Director within five working days.[30] Appeals related to medical treatment go to the Deputy Director for Health and Correctional Programs.[31] Receipt of filing an appeal is to be acknowledge in writing within five days by the Deputy Director's office, unless a written response to the grievance signed by the Deputy Director can be provided within five working days.[32] The Deputy Director has thirty days to respond to the grievance.[33] The response by the Deputy Director is the final step of the grievance process and effectively exhausts all administrative remedies available to the inmate.[34]

During the relevant time period, from February 1, 2007 through December 30, 2007, Plaintiff filed nine grievances.[35] Seven of the grievances were exhausted, and none of these were related to the medical treatment for Plaintiff's eye condition.[36] Defendants' assert that the only grievance related to the February 7, 2007, eye condition and medical emergency, CU-07-00131, was not exhausted because Plaintiff failed to appeal in the allotted time. The other unexhausted grievance, CU-07-00259, related to an issue with a medical co-pay,[37] not with any of the claims raised in Plaintiff's Amended Complaint. Plaintiff argues that the he could not make a timely appeal because "the infirmary would not return the needed form" in time for him to make his

---

[30]*Id*. at § IV (G).

[31]*Id*. at § IV (G)(3).

[32]Doc. No. 155-1, § IV (G)(4).

[33]*Id*. at § IV (G)(5).

[34]*Id*.

[35]Doc. No. 151-1.

[36]Doc. No. 155-2, p. 12.

[37]Doc. No. 151-1.

6

appeal.[38] However, this assertion is not supported by the facts in the record. The record shows that on February 21, 2007, the prison infirmary received and responded to the grievance.[39] Plaintiff claims to have received the response on March 3, 2007.[40] Plaintiff had five working days from the date of receiving the infirmary's response to make an appeal, and his appeal should have been made by March 9, 2007. Plaintiff had the required form before the expiration of the 20 working days in which the infirmary was to respond, and he was clearly in possession of the document that he needed to appeal his grievance to the Deputy Director. Date stamps on the documents received by the ADC Office of the Investigator indicate that the documents were received on April 16, 2007.[41] The grievance appeal was returned on April 18, 2007, because it was not submitted before the time allowed for appeal had expired.[42] Plaintiff has failed to produce evidence showing that his appeal was timely made, so he failed to exhaust his administrative remedies, and his case should be DISMISSED.

Even if his appeal of CU-07-00131 was timely made, Plaintiff failed to exhaust his administrative remedies against the named Defendants because no grievance was filed that describes any of the allegations in the Amended Complaint regarding their conduct. Plaintiff's Amended Complaint accuses Defendant Broadman of failing to perform a visual acuity test and not documenting the seriousness of the bleeding in Plaintiff's eye.[43] However, this is not the

---

[38]Doc. No. 155-2, p. 1.

[39]Doc. No. 151-1, p. 14.

[40]*Id*. The March 3, 2007, date is inferred from the handwritten notation by inmate on the bottom of the CMS Grievance Response. *Id*.

[41]Doc. No. 151-1, p. 11.

[42]*Id*. p. 9.

[43]Doc. No. 141.

subject of the grievance described in CU-07-00131 or of any other grievance. The statement of grievance on the Formal Grievance Form reads:

> I appeal my informal resolution on its merits! It appears that Coats and other infirmary personnel have mastered the art of deceit, mis-direction and obscurantism. Coats obfuscates the situation complained of by claiming I was at the infirmary and seen. What she fails to add is that I had to get Lt. Tucker to take me to the infirmary, once there was seen by Nurse Boardman who said emergency care was when an officer called (I was presented by an officer) and even tho my sick call request stated "emergency" those request were not considered for 48 hours. I was not treated or seen by a doctor for my serious condition![44]

The grievance appears to primarily address a lack of promptness in providing medical care, not the actual care itself.[45] Plaintiff failed to exhaust his administrative remedies by not submitting a grievance related to the care he received from the named Defendants. Such a grievance would not have to be so specific as to present the theory of the case — that the failure to perform a visual acuity test and to document the bleeding caused additional pain and suffering. However, it would have to sufficiently indicate that Plaintiff was still in pain and his vision was still diminished after he was treated by a named Defendant. From the record it is clear that Plaintiff made no such grievance, and thus failed to exhaust his administrative remedies before bringing his complaint.

Defendants' also invite my attention to the interesting fact that the Informal Grievance that initiated the process was submitted before any of the named Defendants even saw the Plaintiff.[46] This suggests that the named Defendants were not the subject of the informal

---

[44]Doc. No.

[45]From the record it is also clear that Plaintiff was provided medical care within 48 hours of making the informal complaint. See Plaintiff's Amended Complaint. Doc. No. 141. Plaintiff was seen by infirmary staff on February 7, 2007, and on the next day, February 8, he was treated at Jones Eye Care Clinic. *Id*.

[46]Doc. No. 150-1, p. 10.

grievance, and could not be the subjects of a Formal Grievance under AR 835. It should also be noted that Defendants Austin and Dr. Blackmon are mentioned nowhere in CU-07-00131. Thus, Plaintiff cannot have exhausted any administrative remedies he may have had against those Defendants.

Additionally, Plaintiff failed to exhaust his administrative remedies relating to the claim that Defendants were deliberately indifferent by failing to communicate the recommendations of Jones Eye Clinic regarding light duty and additional pillows to prison staff. There is no record that Plaintiff submitted any grievance that the named Defendants failed to inform prison staff about the recommendations made by the eye clinic. By not submitting a grievance he failed to exhaust his administrative remedies as required by the PLRA, and this claim should also be DISMISSED.

## CONCLUSION

For the reasons discussed above Plaintiff's Motion for Summary Judgment (Doc. No. 148) is GRANTED.

IT IS SO ORDERED this 7th day of February, 2011.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE